**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

VIOLETA GJONAJ,

                    *Plaintiff,*                                **18 CV 6055**

     *v.*

                                                            **COMPLAINT**

BLACKROCK, INC.,

                    *Defendant.*

------------------------------------------------------------------------×

        Plaintiff Violeta Gjonaj, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant BlackRock, Inc. ("BlackRock") as follows:

**PRELIMINARY STATEMENT**

        1.      After nearly two years of employment at BlackRock, BlackRock accused Ms. Gjonaj of lying when she denied having been physically abused by her boyfriend.  Ms. Gjonaj offered to submit both a witness statement and a note from her therapist showing that she was not the victim of domestic violence, but BlackRock refused to listen to Ms. Gjonaj and, instead, marked her as a liar.  At the end of December 2017, Ms. Gjonaj learned she was pregnant and disclosed this information to BlackRock.  Shortly after, BlackRock terminated her employment due to "suspicion of falsification," claiming that Ms. Gjonaj had improperly logged her hours worked—despite the fact that Ms. Gjonaj followed BlackRock's instructions regarding timekeeping throughout her employment and was never disciplined, told she was billing her time incorrectly, nor instructed on any other way to bill.  In reality, BlackRock terminated Ms. Gjonaj based on her pregnancy and their perception of her being a victim of domestic abuse.

        2.      Ms. Gjonaj seeks damages and costs against BlackRock for discriminating against her based on her gender by terminating her employment because of her gender and pregnancy, in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.*

1

3.      Ms. Gjonaj also seeks damages and costs against BlackRock for discriminating against her based on its perception of her as a victim of domestic violence, in violation of the NYCHRL.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

      a.   Plaintiff is a citizen of the State of New Jersey, as she is domiciled in the State of New Jersey.

      b.   Upon information and belief, Defendant is a citizen of the State of Delaware, as it is a corporation organized under the laws of the State of Delaware, and a citizen of the State of New York, as its headquarters are located in the State of New York.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

6.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

7.      Plaintiff, at all times relevant hereto, was and is a resident of Bergen County in the State of New Jersey.

8.      Upon information and belief, at all times relevant hereto, Defendant was and is a foreign business corporation organized under the laws of the State of Delaware with its headquarters located in the state of New York.

## STATEMENT OF FACTS

9.      In August 2015, BlackRock, a large asset management company, hired Ms. Gjonaj as an Executive Assistant, supporting Linda Robinson, the Global Head of Marketing and Communications and a senior managing director.

10.      In February 2016, Ms. Gjonaj started working for Thomas Wojcik, the Head of Investor Relations and Corporate Development and another senior managing director.

11.      During her employment, Ms. Gjonaj successfully completed her job responsibilities and received positive performance evaluations, bonuses, and promotions.

12.      In February 2017, Ms. Gjonaj fell during a trip she took with Laura Tully, another BlackRock employee, and broke her nose.

13.      When Ms. Gjonaj returned to work with her nose visibly broken, BlackRock employees Toretha McGuire, the Human Resources Liaison, and Larry Knafo, the Managing Director and Chief Security Officer, made inappropriate comments to Ms. Gjonaj about her appearance, asserting that Ms. Gjonaj was the victim of domestic violence, which she denied.

14.      Besides this incident, Ms. Gjonaj never showed up to work with any broken bones, casts, or bruises.

15.      Human Resources (HR) then scheduled a meeting with Ms. Gjonaj.

16.      In this meeting, Ms. McGuire, expressed her concern for Ms. Gjonaj's safety, as she believed Ms. Gjonaj's broken nose was the result of domestic violence and not a fall, as Ms. Gjonaj had said.

17.     Simply put, BlackRock stereotyped Ms. Gjonaj as a victim of domestic abuse because she is a woman.

18.     On July 28, 2017, Ms. McGuire called Ms. Gjonaj into another meeting, where she told Ms. Gjonaj that her "coworkers were concerned" and stated, "It looks like you have a black eye."

19.     Surprised by this comment, as Ms. Gjonaj neither suffered nor had any visible injuries, she replied that she did not have a black eye, to which Ms. McGuire conceded, "Well, maybe you're covering it up with makeup."

20.     Ms. Gjonaj repeated that she was not being abused by her boyfriend and attempted to submit a statement from Ms. Tully, who had witnessed her fall back in February, but HR did not allow her to do so.

21.     BlackRock then threatened to terminate Ms. Gjonaj, saying that BlackRock could not trust Ms. Gjonaj's judgment if she allowed herself to be in a dangerous situation without asking for assistance.

22.     Ms. Gjonaj repeated that she was not a domestic violence victim, to which Ms. McGuire responded by pressuring her to undergo a psychological evaluation.

23.     Ms. Gjonaj was mortified by the invasiveness of the evaluation, as well as HR's disregard of her privacy and insistence that Ms. Gjonaj had been assaulted when, in fact, she had not.

24.     Ms. Gjonaj then told Ms. McGuire that, although she was not a domestic violence victim, she was, nonetheless, already seeing a therapist.

25.    Ms. McGuire then required that Ms. Gjonaj provide a letter from her therapist, asserting that she was of "sound judgment" to perform her job responsibilities before she could return to work.

26.    On July 31, 2017, Ms. McGuire wrote Ms. Gjonaj a follow up email requesting the therapist's letter, which Ms. Gjonaj provided.

27.    As a result of this discussion, BlackRock demoted Ms. Gjonaj from her position as Executive Assistant to Administrative Assistant, now supporting Samantha Tortora, the Deputy Head of Investor Relations.

28.    At the end of December 2017, Ms. Gjonaj learned she was pregnant.

29.    Ms. Gjonaj promptly notified her manager, Ms. Tortora, of her pregnancy during Ms. Gjonaj's year-end review.

30.    On January 9, 2018, shortly after Ms. Gjonaj had revealed her pregnancy to BlackRock, Ms. Gjonaj received a message from Kris McDonnell, an Employee Relations Manager in BlackRock's San Francisco office.

31.    Ms. McDonnell questioned Ms. Gjonaj about vacation days Ms. Gjonaj had taken in November and mid-December 2017 and asked her to review her time off during the period in question to make sure it was logged properly.

32.    Ms. Gjonaj reviewed her time off, provided a summary of the work she completed during any of her days off, and called Ms. McDonnell back on January 16, 2018, relaying this information in a message to Ms. McDonnell's assistant.

33.    On January 22, 2018, Ms. McDonnell responded to Ms. Gjonaj's message, summoning Ms. Gjonaj to a meeting with HR, during which HR asked Ms. Gjonaj about time she had logged on vacation days, as well as her overtime hours.

34.     In this meeting, HR asked Ms. Gjonaj about vacation days she had previously taken in November and June, as well as why she had worked so much overtime under her previous manager.

35.     Ms. Gjonaj explained that her manager at the time, Mr. Wojcik, had requested her to work after hours, including around-the-clock availability on weekends as needed, in addition to working 8:00 a.m. to 6:00 p.m., Monday through Friday.

36.     Ms. McDonnell then told Ms. Gjonaj that working remotely or working after hours was "not considered overtime," and that only in-office hours should be logged as overtime.

37.     At the beginning of Ms. Gjonaj's employment, Ms. Robinson trained Ms. Gjonaj in BlackRock's timekeeping procedures, including what items to bill for and how to do so.

38.     Following Ms. Robinson's direction and instruction, Ms. Gjonaj billed and submitted time for out-of-office hours spent checking and responding to emails; days working from home; and for hours working at night to set up calls and respond to emails.

39.     Ms. Gjonaj followed Ms. Robinson's instructions regarding timekeeping throughout her employment and was never disciplined, told she was billing her time incorrectly, or instructed on any other way to bill until January 2018.

40.     Therefore, Ms. Gjonaj did not violate any rule—she had tracked her hours as instructed and complied with all of BlackRock's requests.

41.     Nonetheless, Ms. McDonnell told Ms. Gjonaj that due to the "suspicion of falsification," Ms. Gjonaj's employment was terminated immediately.

42.     In reality, BlackRock terminated Ms. Gjonaj because it perceived her to be the victim of domestic abuse and because of her pregnancy.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
**Wrongful Termination Based on Gender and Pregnancy in Violation of the NYCHRL**

43.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 42 with the same force as though separately alleged herein.

44.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of gender and pregnancy.

45.     Defendant violated the NYCHRL when it terminated Plaintiff's employment based on gender and pregnancy.

46.     As a direct and proximate consequence of Defendant's gender and pregnancy discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

47.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
**Wrongful Termination Based on Perception of Domestic Violence Victim in Violation of the NYCHRL**

48.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 47 with the same force as though separately alleged herein.

49.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of actual or perceived status as a victim of domestic violence.

7

50.     Defendant violated the NYCHRL when it terminated Plaintiff's employment based on its perception that she was a victim of domestic violence.

51.     As a direct and proximate consequence of Defendant's domestic violence victim discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

52.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

B.  For the second cause of action, compensatory damages, punitive damages, attorneys' fees, and costs to be determined at trial;

C.  For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 3, 2018

                              By:        s/Walker G. Harman, Jr.
                                  Walker G. Harman, Jr. [WH-8044]
                                  Edgar M. Rivera [ER-1378]
                                  THE HARMAN FIRM, LLP
                                  381 Park Avenue South, Suite 1220
                                  New York, NY 10016
                                  (212) 425-2600
                                  wharman@theharmanfirm.com
                                  erivera@theharmanfirm.com

                                  *Attorneys for Plaintiff*

8